```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NORTH DAKOTA
                   SOUTHEASTERN DIVISION
```

| | |
|---|---|
| Duratech Industries )<br>International, Inc., )<br>   )<br>          Plaintiff,   )<br>   )   Case No. 3:05-cv-90<br>   vs.        )<br>   )<br>Bridgeview Manufacturing, )<br>Inc.,   )<br>   )<br>          Defendant.   ) | |

### Markman Opinion and Order

The Plaintiff, Duratech Industries ("Duratech"), sued the Defendant, Bridgeview Manufacturing ("Bridgeview"), for a declaratory judgment of noninfringement or patent invalidity. Bridgeview owns U.S. Patent No. 6,375,104 ("the '104 Patent") for a crop material processor. On June 26, 2007, the Court held a Markman[1] hearing. The only disputed claim was the independent claim's limitation for a "manipulator." Having considered the '104 Patent and the evidence before the Court, the Court construes the manipulator limitation as a means-plus-function limitation.

**I.  Facts**

On April 23, 2002, the United States Patent and Trademark Office issued the '104 Patent for a crop material processor ("the processor"). The '104 Patent was a continuation of U.S. Patent

---

[1] Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

1

No. 6,109,553 ("the '553 Patent"), also for a crop material processor. The processor is a farm implement farmers and ranchers use to turn large crop material bales into a more usable form. The processor utilizes four walls--front, back, left and right--to create a container that bales are dropped into. The bale is then supported by the walls and a "manipulator." The manipulator in this embodiment is two or more square rollers with paddles protruding from the rollers. When the processor is in operation, a tractor uses its power-take-off ("PTO") drive to provide mechanical power to the processor. The manipulator rollers begin to rotate, turning the bale in a circle. A "disintegrator," which in this patent is a flail shredder, sits below the opening between the rollers. The disintegrator rotates at the same time as the manipulator rollers. While the two are moving simultaneously, the bottom of the bale is exposed to the disintegrator, and the disintegrator shreds the bale and ejects it out of a door, called a "discharge opening," on either the left or right wall of the processor.

   This process allows farmers and ranchers to use baled crop material more effectively. For example, hay bales can be shredded into a more edible form for cattle, and the hay can be placed in a feed bunk or windrows. By opening the discharge opening more, straw bales can be shredded and spread over a larger area for bedding.

   Duratech manufactures its own crop material processor. One difference between the two machines is instead of using a roller

2

manipulator and center mounted disintegrator, the Duratech processor uses a slat-chain conveyer to turn the bale and expose it to a flail shredder that is mounted to the right side of the machine's container.  Duratech alleges its processor does not infringe Bridgeview's patent or, in the alternative, Bridgeview's patent is invalid.  Bridgeview contends Duratech's processor infringes its patent.

The '104 Patent contains nine claims.  Claim 1 is an independent claim, and Claims 2-9 are dependent claims.  Claim 1 contains five limitations.  The parties mostly agree as to how the claim limitations should be construed.  The only contested limitation is the "manipulator" limitation.  That limitation states, "a manipulator mounted inside the container for driving crop material into the disintegrator[.]"  Because this is the only contested limitation, the Court will not quote all of Claim 1 verbatim.  Duratech argues the Court should construe manipulator as a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6.  Bridgeview argues that construction is improper and manipulator is better understood in its plain meaning.

**II.  Discussion**

The construction of patent claims is a matter of law for the Court.  Markman, 517 U.S. at 372.  When construing patents, the Court must initially consider intrinsic evidence of the claims' meaning.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

3

The Court first looks to the claim and the words of the claim, giving the words their plain meaning. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). Plain or ordinary meaning is the meaning the term carries for "a person of ordinary skill in the art in question at the time of the invention." Id. at 1313. General purpose dictionaries can be helpful at this point. Id. at 1314.

Next, the Court considers the entire specification to define technical terms that may not lend themselves to an ordinary meaning. Id. at 1315. The specification must be examined so that the claims do not stand alone but are considered as part of one integrated instrument. Id. In Phillips, the Federal Circuit reaffirmed that "'[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history.'" Id. (quoting Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1478 (Fed. Cir. 1998)). If the patent applicant has given a special definition to a technical term, that definition is followed. Vitronics, 90 F.3d at 1582.

Intrinsic evidence also includes the patent's prosecution history. Phillips, 415 F.3d at 1317. The prosecution history includes the prior art the applicant cites. Id. The Court must be mindful that the prosecution history lacks the clarity of the specification and is, thus, less useful. Id.

If the claim is still ambiguous after considering these sources of intrinsic evidence, the Court may look to extrinsic

4

evidence such as expert and inventor opinions, dictionaries, treatises, and articles. Id. Extrinsic evidence is a last resort, however. Relying on extrinsic evidence when intrinsic evidence is sufficient to construe a claim is improper. Vitronics, 90 F.3d at 1584-85.

    A.   "Manipulator"

The manipulator limitation of the claim states, "a manipulator mounted inside the container for driving crop material into the disintegrator[.]" Duratech argues this is a means-plus-function limitation. Means-plus-function limitations are provided for under 35 U.S.C. § 112, ¶ 6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Section 112, ¶ 6, allows an applicant to protect a structure that performs a specific function without specifically describing every part of the structure in the claim. 2 John Gladstone Mills III et. al., Patent Law Fundamentals § 14:36 (2d ed. 2007). However, in order to take advantage of this shortened form, the applicant is limited to the structure's description in the specification. Id.

In a means-plus-function analysis, the Court must first identify what function is to be performed. Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002). The function can only include the limitations contained

5

in the claim language.  Id.  After identifying the function, the Court must identify the "means" or structure that carries out the function.  Id.  The structure must perform the function, and the specification must clearly associate the two.  Id.

Including the word "means" in a claim creates a presumption that the applicant intended § 112, ¶6, to apply.  Id.  Inversely, excluding the word "means" creates a rebuttable presumption that § 112, ¶ 6, does not apply.  Phillips, 415 F.3d at 1311.

Bridgeview encourages the Court to adopt the plain meaning of manipulator.  In support, it argues that a person of ordinary skill in the art would understand what "manipulator" means and that general purpose dictionaries provide a sufficient definition of manipulator.  These arguments fail for two reasons.

First, none of the prior art disclosed in the '104 patent (Markman hearing Exh. #1), which is part of the prosecution history, uses "manipulator."  The prior-art patents use many other terms to describe limitations similar to Bridgeview's manipulator, but "manipulator" appears to be a new way of expressing the limitation.  By contrast, the term "disintegrator" used in the '104 Patent is found in several of the prior-art patents in different forms such as "disintegrator," "disintegrating," or "disintegrate."  Therefore, disintegrator provides a good example of a term ordinary people in the art would understand.  Manipulator does not share this status.

Second, the dictionary definition cannot stand alone because the Phillips court warned against relying too much on a

6

dictionary meaning of a term.  415 F.3d at 1320-21.  Although the dictionary meaning is helpful, it cannot stand in the place of a specific specification that provides a clear construction of a claim.  Id.  Therefore, both of Bridgeview's arguments fail, and the Court cannot rely on the plain meaning of manipulator.

The manipulator limitation provides the function:  "driving crop material into the disintegrator[.]"  The structure associated with the function is "manipulator."  In the specification, the phrase "manipulator means" is used at least five times.  The specification describes with particularity the engineering of the manipulator.  The only embodiment discussed is the use of rollers with paddles protruding from the rollers. The specification does not provide any other examples of possible structures that would work as a manipulator.  This language provides a clear indication that a "manipulator" is only the structure described in the specification.

Bridgeview notes the claims in the companion '553 Patent uses language that is clearly intended to be a means plus function limitation: "means for supporting and manipulating the crop material for disintegration primarily by the disintegrator." (doc. #80-2).  Bridgeview argues this proves the manipulator limitation of the '104 patent is not a means-plus-function limitation because the '104 Patent was written after the '553 patent.  However, Duratech introduced into evidence at the Markman hearing the original applications for the '104 Patent (Markman hearing Exh. #5).  These application documents reveal

7

that Bridgeview tried to secure a broad protection for its manipulator limitation that did not include a function limitation: "a manipulator mounted inside the container substantially parallel to the disintegrator."  The Patent and Trademark Office rejected this limitation twice.  Bridgeview then added the function "for driving the crop material into the disintegrator."  The Patent and Trademark Office approved this limitation.  Although Bridgeview did not want to include a function limitation, the function was needed.  This, combined with the specificity of the specification, rebuts the presumption that the manipulator limitation is not a means-plus-function limitation.

    The Court construes the limitation "a manipulator mounted inside the container for driving the crop material into the disintegrator" to be a means-plus-function limitation as provided in 35 U.S.C. § 112, ¶ 6.  The function that is protected is "driving crop material into the disintegrator[.]"  The Court construes the protected structure to be at least a pair of longitudinally extending crop material support rollers that are positioned above the disintegrator to define a disintegration opening between the rollers through which a portion of the disintegrator may rotate to engage the crop material supported by the rollers.

    Bridgeview argues that even if the manipulator limitation is a means-plus-function limitation, it is entitled to protection of equivalents as provided under 35 U.S.C. § 112, ¶ 6.  While this

is true, see 35 U.S.C. § 112, ¶ 6 ("and equivalents thereof."), the only purpose of a Markman hearing is to construe the claims of the patent. Whether Duratech's conveyor system is an equivalent entitled to protection is not before the Court.

B. Other Claims

All other claims found in the '104 Patent will be construed in their plain meaning. Duratech initially provided an alternative construction for "back wall." At the Markman hearing, Duratech's attorney abandoned that construction. Therefore, the term "back wall" is construed in its plain meaning. Likewise, Bridgeview suggested an alternative construction to the final limitation of Claim 1 for a "rotation converter." Also at the Markman hearing, Bridgeview's attorney abandoned that construction. Therefore, that limitation will be construed in its plain meaning.

**IT IS SO ORDERED.**

Dated this 16th day of July, 2007.

/s/ Rodney S. Webb
RODNEY S. WEBB, District Judge
United States District Court

9